**UNITED STATES of America**
v.
**Sol LUBITSCH, Defendant.**
**No. 66 CR. 917.**

United States District Court
S. D. New York.
Jan. 27, 1967.

Robert M. Morgenthau, U. S. Atty., S. D. N. Y., for plaintiff, Pierre N. Leval, New York City, of counsel.

Moses Polakoff, New York City, for defendant.

## MEMORANDUM

TENNEY, District Judge.

Defendant moves herein, pursuant to Rules 41(e) and 12(b) (4) of the Federal Rules of Criminal Procedure: (1) to suppress as evidence any exculpating or inculpating statements made by defendant on the grounds that the same were obtained in violation of his rights under the fifth amendment; (2) for an order, pursuant to Rules 6(e) and 12(b) (4) of said Rules requiring submission of all grand jury proceedings in the case for inspection by the Court to ascertain whether the indictment in this case was obtained or procured by the use of unconstitutional and illegal evidence, and (3) for inspection, pursuant to Rules 16 and 17(c) of said Rules, of defendant's audit examination report of a certain income tax return and of said income tax return.

The Government has consented to the discovery and inspection of the above-mentioned audit examination report and income tax return, and the Court has conducted a hearing with respect to the suppression of certain statements made by defendant to an Assistant United States Attorney and to Internal Revenue Service inspectors on November 18, 1964.

Although the defendant's moving papers are not clear or specific, it would appear that the defendant's request for *in camera* examination of the Grand Jury minutes relates to his claim that his statements above referred to were illegally obtained and were the grounds for the return of the indictment by the Grand Jury, so that a finding against defendant on the motion to suppress would be determinative also of the motion for *in camera* inspection.

It appears from the hearing held herein that defendant, on November 18, 1964, was served with a grand jury subpoena, returnable forthwith. Service of the subpoena was made in the Office of the District Director at the defendant's place of employment, the Brooklyn Office of the Internal Revenue Service, and was effected by Mr. Kincheloe, an inspector with the Internal Revenue Service, Inspection Service.

Thereafter, defendant, accompanied by Inspector Kincheloe and Inspector Bright, also of the Internal Revenue Service, went to the United States Court House, Foley Square, in the Borough of Manhattan, New York City, and was interviewed briefly by Andrew J. Maloney, an Assistant United States Attorney.

The circumstances relating to the service of the subpoena, defendant's subsequent appearance in the Office of the Assistant United States Attorney, and what occurred at that time as developed at the hearing held herein will be discussed in greater detail hereinafter.

On November 23, 1964, five days after defendant's appearance at the United States Court House, a complaint was issued charging him with a violation of Title 18 U.S.C. § 201, and he was arraigned before the United States Commissioner on November 24, 1964, at which time he was represented by an attorney who has continued to represent him throughout these proceedings.

On June 7, 1965, an indictment (65 Cr. 516, since superseded) was filed charging a violation of Section 201.

On November 10, 1966, the present indictment (66 Cr. 917) was filed to supersede the prior one. The present indictment is in two counts and charges the defendant with violations of Title 18 U.S.C. §§ 201(c) and 201(g) in that on or about April 22, 1963, he received

$200 from one Albert Goldstein in connection with defendant's official duty to conduct the audit examination of the 1960 income tax return of Dr. Robert and Mrs. Lillian Schwartz.

Defendant has pleaded not guilty, and on November 22, 1966 filed the motions presently before the Court.

Although, as already noted, the motion papers are deficient in that they do not specify in any detail the grounds on which the motion to suppress is made (other than a statement that it is made pursuant to Rule 41(e) and the fifth amendment), it appears clear from the evidence adduced that the essence of his claim is that any statements he made were not voluntarily given and were given without the benefit of counsel present (although he makes no reference to sixth amendment rights).

According to the testimony of Inspectors Kincheloe and Bright, the inspectors on June 18, 1964 went to the District Director's Office in Brooklyn, New York, where defendant was employed as an office auditor. At that time, Inspector Kincheloe had a grand jury subpoena dated that date and returnable forthwith, calling for defendant's appearance before the Grand Jury to testify and give evidence in regard to an alleged violation of Title 18 U.S.C. § 371.

Defendant was called to the District Director's Office where he was introduced to the inspectors, at which time Inspector Kincheloe advised him that he had a grand jury subpoena directed to defendant and that he would like him to accompany him to the Southern District of New York.

The defendant was not informed that he was under arrest. In fact, when defendant asked the inspectors in the District Director's Office whether he was under arrest, the reply was in the negative. The inspectors testified that they rode in the subway with defendant and that during this ride there was no conversation other than an occasional request by defendant to learn what it was all about—to which they replied that he would be informed by the Assistant United States Attorney. They further testified that on arriving at the Court House they waited together approximately one-half hour outside the Office of the Assistant United States Attorney, and that at no time during this wait did the defendant ask to be permitted to consult with an attorney or to use the telephone; nor did he at any time make any attempt to use the telephone nor was he told that he could not consult with an attorney or use the telephone.

They also testified that upon entering the Office of the Assistant United States Attorney the defendant was told that he was in trouble, that he did not have to make any statement, that any statement he did make could possibly be used against him in a later proceeding, and that he had a right to counsel before answering any questions.

No claim is made that he was advised that counsel would be supplied to him if he were indigent and unable to afford counsel. They further testified that at no time during the conversation with the Assistant United States Attorney did the defendant ask to or attempt to use a telephone or ask to be allowed to call or consult with an attorney.

Defendant's version is in certain respects contradictory to that of the inspectors who were present throughout the interview. Although he testified that he was not served with a subpoena until just before they left the Office of the District Director in Brooklyn, he does not dispute the fact that he was clearly informed that he was not under arrest. He further charges that while waiting at the Court House, prior to the interview with the Assistant United States Attorney, he was subject to restraint, was followed wherever he went, was denied permission to use the telephone or to talk with other revenue agents or persons waiting in the vicinity. He further testified that the Assistant United States Attorney screamed at him, that he was never advised of his right to an attorney, and that throughout the conversation with the

Assistant United States Attorney his repeated demands to see his lawyer were absolutely ignored.

These aspects of the defendant's testimony, the points upon which he relies principally, when taken all together, seem highly unlikely and appear to have been engendered by the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided on June 13, 1966. Indeed, if true, defendant's assertions would bring him within the rule set forth in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, decided on June 22, 1964, so that defendant's failure to move until now casts considerable doubt on the validity of his claim. There is no question that defendant did, at a stage in the proceedings, refuse to answer any further questions or to sign anything until he had consulted with an attorney. This, however, occurred after he had answered the questions which are sought to be suppressed and after the Assistant United States Attorney had left the room, such refusal being directed to the inspectors who had requested that he go with them to the Inspection Service to make a statement. Although he was taken to the Inspection Service, but not under arrest, any statement which he made there (there is no evidence of any such statement having been obtained), is not the subject of the present motion to suppress.

 I credit the testimony of the inspectors that the defendant was informed by the Assistant United States Attorney of the nature of the charges against him, that he did not have to make any statement, that any statement he did make could be used against him in a later proceedings, and that he was also advised that he was entitled to the presence of counsel before making any statement.

I further believe and find, as testified to by the inspectors, that he was asked to cooperate in order to weed out corruption in the Internal Revenue Service, that he then denied ever having accepted any bribes from an accountant, and that he made the admissions, the inculpatory admissions, only when the accountant Goldstein asserted in his presence that he had given him a bribe. I further find that it was only after he had made these admissions that he retracted his prior voluntary waiver of the right to the presence of counsel and refused to answer any further questions or to sign any statement.

 While it is true that Miranda v. State of Arizona controls herein, I do not believe that the failure to advise defendant that, if he were indigent, counsel would be supplied for him mandates the suppression of those statements made after other *Miranda* requirements had been complied with.

Defendant was an employee of the Internal Revenue Service and had been since 1949, and was receiving wages in excess of $9,000 at the time of the interview. He also owned his home jointly with his wife, for which he had paid some $20,000 and had a credit balance in his bank account at that time in excess of $1,800. It was admitted by his counsel at the hearing before me that defendant was not an indigent person and that "what we are testing is at that time that he was not specifically affirmatively advised that he was entitled to counsel."

As pointed out in Miranda v. State of Arizona,

"[w]hile a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney *or is known to have ample funds to secure one*, the expedient of giving a warning is too simple and the rights involved too important to engage in *ex post facto* inquiries into financial ability when there is any doubt at all on that score." 384 U.S. at 473 n.43, 86 S.Ct. at 1627. (Emphasis added.)

While it might have been the better practice to have anticipated *Miranda* and exercised the simple expedient of considering the defendant as a possible indigent and advising him of his rights

under such circumstances, failure to do so in the circumstances of this case in no way prejudiced this defendant nor detracted from the voluntariness of his admissions. Accordingly, I find that the defendant was fully advised as to his constitutional rights and that he waived those rights knowingly and voluntarily in making the statements which he now seeks to suppress.

Therefore, his motion to suppress is denied, as is his motion for an *in camera* inspection by the Court of the minutes of the Grand Jury.

So ordered.