**Willie McINTYRE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18696.**

United States Court of Appeals
Eighth Circuit.

July 18, 1967.

---

Gerald M. Smith, St. Louis, Mo., for appellant and filed brief.

Harold F. Fullwood, Asst. U. S. Atty., for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VOGEL, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The appellant, Willie McIntyre, was indicted for stealing copper tubing of a value in excess of $100.00 from an interstate shipment contrary to 18 U.S.C.A. § 659. He was arraigned, pleaded not guilty, and was tried before a jury. The jury returned a guilty verdict and he received a six-year sentence to be served in the custody of the United States Attorney General under the provisions of 18 U.S.C.A. § 4208(a) (2).

The appellant appeals from the judgment of conviction and sentence of the District Court. He raises two issues: (1) There was no credible evidence establishing that the copper tubing he is charged with having stolen came from an interstate shipment; and (2) the court erred in accepting the jury verdict because the Government failed to establish that the stolen copper tubing was worth more than $100.00.

The appellant did not testify or present witnesses on his behalf. He raised no objection to evidence introduced by the Government, to the jury instructions given by the court, or to the form of the jury verdict. The trial court gave all of the instructions requested by the appellant.

We turn to a consideration of the two issues raised on appeal. In so doing, we must view the evidence in the light most likely to sustain the verdict. All reasonable inferences are to be resolved in favor of the Government. Raftis v. United States, 364 F.2d 948, 951 (8th Cir. 1966); Friedman v. United States, 347 F.2d 697, 706 (8th Cir. 1966),

cert. denied 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1966).

1. *There was sufficient evidence to support a finding that the copper tubing came from an interstate shipment.*

The evidence on this point is clear and undisputed.

A tractor-trailer unit, trailer #200177, was loaded with a shipment of copper tubing in East St. Louis, Illinois, on August 30, 1966. It was locked, sealed, weighed and pulled interstate to a parking lot in St. Louis, Missouri. This lot was owned by the Industrial Cartage Company.

About noon, September 1, 1966, a Cartage employee discovered that the trailer had been tampered with and observed two men a short distance from the trailer in some weeds waving copper tubing in the air. Minutes later, he and a St. Louis policeman pursued the two men observed in the weeds. The appellant was captured. (Both the patrolman and the Cartage employee saw the two men holding copper tubing in their hands immediately before the arrest.)

The weeds near the trailer (#200177) were examined by police officers and Cartage employees. They found an axe and numerous pieces of copper tubing which had been cut into small sections. They also found fourteen pieces of undamaged three-quarter inch twenty-foot-long copper tubing and two shorter damaged sections of the same tubing, which they reloaded into the trailer.

A service station operator, working adjacent to the Industrial Cartage lot, identified the appellant as one of two men he saw remove several sections of tubing from a trailer in the lot shortly before the appellant's capture. He testified he saw the two take the tubing into the weeds and heard the sounds of tubing being cut.

No evidence was presented that any other trailers in the Cartage lot contained copper tubing. Various shipping documents (bills of lading, shipping

orders, and delivery receipts) [1] indicated that trailer #200177 was short fourteen twenty-foot lengths of type "L" copper tubing when it reached its California destination. The documents also showed that two pieces of the tubing had five feet cut from each end.

■ On the basis of these facts, we are convinced that the jury properly determined that the appellant had stolen copper tubing from trailer #200177 which had moved in interstate commerce. Compare Hall v. United States, 182 F.2d 833 (8th Cir. 1950). We cannot disregard the eye witness account of the service station operator who saw the appellant removing tubing from a trailer shortly before the police arrived, the positive statements by a St. Louis police officer and a Cartage employee that the appellant was holding copper tubing in his hands in the weeds near the truck prior to fleeing, and the fact that large amounts of copper tubing were found in the weeds near the truck where the appellant and his accomplice were observed. Nor can we disregard the fact that shipping records, received in evidence without objection, clearly showed that copper tubing had been removed from the trailer in question.

2. *The evidence clearly established that the copper tubing stolen by the appellant had a value in excess of $100.00.*

■ The evidence and testimony of numerous Government witnesses established that the appellant and his companion removed at least thirty pieces of three-quarter inch twenty-foot-long pieces of copper tubing from trailer #200177. The price per foot of this copper was established to be thirty-three and one-third cents. These facts alone were sufficient for the jury to find the value of the stolen tubing to be in excess of $100.00. See Thogmartin v. United States, 313 F.2d 589 (8th Cir. 1963);

Gendron v. United States, 295 F.2d 897 (8th Cir. 1961); compare Robinson v. United States, 333 F.2d 323 (8th Cir. 1964).

■ The trial judge carefully instructed the jury that it was to determine whether or not the value of the goods taken exceeded $100.00. There was no objection to this instruction, nor to the form of the verdict which required the jury to determine the value of the tubing. The jury's verdict, under such circumstances, must be accepted. See Torres v. United States, 270 F.2d 252, 259 (9th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960).

Robinson v. United States, supra, relied upon by the appellant, is clearly distinguishable. 333 F.2d at page 326 of the opinion, Judge Ridge wrote:

"The most that can be gleaned from the evidence adduced before the jury is that appellant Robinson only had two dresses in his possession; and that an unstated number of dresses were in Westmoreland's possession. The testimony does not, with any degree of certainty, establish the number of dresses in either appellant's possession, so as to reasonably fix the value thereof at more than $100.00. * * * "

Unlike *Robinson*, the testimony in the present case does establish with certainty the amount of tubing stolen and the per-foot price of such tubing. A Cartage employee testified he reloaded sixteen lengths of twenty-foot pipe onto trailer #200177. Shipping documents indicated a shortage of fourteen twenty-foot lengths of pipe upon arrival at the trailer's destination. Government Exhibit 8 was the copper tubing gathered at the scene and kept by the police. According to the appellant, this tubing measured two hundred and thirty-five feet and

---

1. There was no objection raised to the introduction of these documents and, absent plain error, we will not consider issues not raised at trial. Resort to the plain error rule is appropriate only in exceptional cases where such a course is necessary to prevent a clear miscarriage of justice. Petschl v. United States, 369 F.2d 769 (8th Cir. 1966); Johnson v. United States, 362 F.2d 43, 46 (8th Cir. 1966). We do not apply the rule here.

eight inches long, and had a value of $78.95. Only if we disregarded the fact that sixteen lengths of tubing were reloaded onto the trailer could we find the value of copper stolen to be less than $100.00.

The indictment charged the appellant with stealing "2 bundles, more or less, copper tubing, of a value exceeding $100.00." The appellant contends that there was a fatal variance between the indictment and the proof at trial on the theory that the lengths of copper tubing which had been chopped up by the appellant and gathered into two bundles at the scene of the crime, with a value of less than $100.00 were the two bundles referred to in the indictment.[2]

■■ No motion to quash the indictment was made at any time by the appellant, thus the question was not properly preserved for appeal. Fed.R.Crim.P. 12 (b) (2); Russell v. United States, 369 U.S. 749, 753, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Even were the issue properly preserved for appeal, we would find against the appellant.

The use in the indictment of the words "2 bundles, more or less," was descriptive, and the essential element of the indictment insofar as value was concerned was the statement that the tubing alleged to have been stolen had a value in excess of $100.00.

In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Supreme Court said:

"The true inquiry, therefore, is not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense. * * *"

See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Brilliant v. United States, 297 F.2d 385 (8th Cir. 1962), cert. denied 369 U.S. 871, 82 S.Ct. 1140, 8 L.Ed.2d 275 (1962). The indictment here clearly informed the defendant of the time and place of the alleged theft and that he was charged with having taken copper tubing having a value in excess of $100.00 from an interstate shipment. Thus, he was able to properly prepare a defense and should not have been surprised by any of the evidence offered by the prosecution.

Affirmed.

2. It seems apparent from the outset of the trial that the copper tubing, allegedly stolen, had been wrapped in bundles of ten twenty-foot lengths of pipe per bundle. In a colloquy with a witness, Judge Regan obtained the following information:

"THE COURT: Then it is thirty-three and a third cents a foot, and twenty-foot length would be about $6.60.

"WITNESS: Approximately $6.60.

"THE COURT: All right. How many twenty-foot lengths would be in a bundle?

"THE WITNESS: There's ten lengths in a bundle.

"THE COURT: So each bundle of three-quarter inch diameter Type L copper would be worth about $66.66.

"THE WITNESS: Approximately ten lengths would be $66.50."