DANIEL S. PEARSON, Judge,
dissenting in part; concurring in part.
I would reverse the summary judgment entered for the bank and remand the case to the trial court for further proceedings. The contract between Hartman and Southeast First National Bank provided, inter alia, that:
“(2)(b) [Southeast] shall not entrust Hartman Services, Inc. employees with unattended premises, cash, negotiables and other valuables.
“(2)(c) [Southeast] accepts full responsibility for claims ... arising out of or involving a violation of paragraph (2)(b) above.” (emphasis supplied).
The majority, by affirming the summary judgment entered for the bank,[3] holds as a matter of law that the items entrusted to and made available to Hartman’s employee do not come within the term “negotiables and other valuables.” In so doing, it exonerates the bank from the full responsibility which the bank undertook to accept.
Neither the checks nor copies of the checks are part of the record made in the trial court. The majority opinion refers to the items as “bank checks.” The complaint filed by the bank alleges that the items are “checks.” The affidavit of a bank internal control officer calls them “expense check forms.” The summary judgment entered by the trial court uses the term “blank checks.” I take this indifference to mean that in the view of both the majority and the trial court these items, whatever they are called and whatever they look like, are not negotiables or valuables.
I fail to see how the majority can reach such a conclusion on this record. We are *407 hardly enlightened by a lone affidavit, made by the bank’s internal control officer, which asserts that the employee provided by Hartman “negotiated the checks causing loss to the bank,” “forged the signature G. A. Jones on the checks,” and attests to the legal conclusion that the employee was not entrusted with “negotiatables [sic] and other valuables.” From all that appears in this record, the checks in question might fully meet the requisites of a negotiable instrument under Section 673.104, Florida Statutes (1977),[4] and the forged signature “G. A. Jones” may refer to a forged endorsement which would have no effect upon the negotiability of the instrument. But even if, arguendo, the instruments prove not to be “negotiables,” surely they are either “other valuables” as a matter of law, see United States v. Lancer, 361 F.Supp. 129 (E.D.Pa.1973), reversed, other grounds, 508 F.2d 719 (3d Cir.), cert. denied, 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975)[5]; United States v. Edwards, 473 F.Supp. 81 (D.Mass.1979)[6]; see also United States v. Alberico, 604 F.2d 1315 (10th Cir. 1979)[7], or there is, at least, a question of fact precluding summary judgment as to whether they are “other valuables,” see United States v. Lancer, supra; United States v. Alberico, supra.
In either event, the conclusion that these checks stolen by Hartman’s employee are not, as a matter of law, “other valuables”— in the face of the bank’s loss of $3,152.00 resulting, as the majority says, from the secretary filling out and cashing the “bank checks” — is, in my view, palpably wrong. I would feel far less discomfort with the majority decision if it were graced, which it is not, with a single case supporting the result reached.
I concur in that part of the majority opinion reversing the award of attorneys’ fees in favor of the bank.

. The summary judgment provides, in pertinent part, “... the blank checks taken by one Carolyn Jones [Carolyn Brown] from the Plaintiff bank are not negotiatables [sic] or other values [sic] within the meaning of the exculpatory clause .... ”

. A negotiable instrument must be a writing: (a) signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.

. In United States v. Lancer, supra, the court took judicial notice of the fact that 364 blank stolen postal money orders had an aggregate value of more than $100 on the “thieves market.” The conclusion in the present case that the stolen checks are not “valuables” and are therefore valueless is contrary to the judicially noticed fact in Lancer. Even if such fact were not a proper subject of judicial notice, the conclusion that the stolen checks are valueless pretermitted Hartman from proving such a value.

. In United States v. Edwards, supra, Edwards was charged and convicted with the theft of a “thing of value of the United States,” under Title 18 U.S.C. § 641. Edwards argued that upon mailing the check issued by the United States, it became the property of the named payee and was no longer a “thing of value of the United States.” The court rejected this argument, holding that the check remained a “thing of value of the United States,” since the United States continued to bear the risk of the loss and would be liable on the instrument despite the theft. See also United States v. Miller, 520 F.2d 1208 (9th Cir. 1975); United States v. Lee, 454 F.2d 190, 192 (9th Cir. 1972); Clark v. United States, 268 F. 329 (6th Cir. 1920) (“In a prosecution for the theft of evidence of debt, such as ... checks ... the value of the instrument . .. under particular statutory provisions, ... is deemed to be the money due on the instrument .... ”).

.In United States v. Alberico, supra, the defendant stole three United States Treasury checks bearing the stamped signature of the United States Air Force disbursing officer made payable to the Rocky Mountain Arsenal. The face values of the checks totalled approximately $75,000. The defendant contended the checks were not “things of value” within Title 18 U.S.C. § 641. The court held that the face amount of the checks defined their value, despite defendant’s argument that he could not cash them and they were of no value to him. In fact, the defendant had sold the checks for $7,000 to an undercover F.B.I. Agent in a sting operation but the court rejected this as an artificial value. As in United States v. Lancer, supra, the court allowed that a permissible theory of value would be evidence of the value of the checks on a thieves’ market, but no such evidence was adduced by the Government.